UNITERD STATES DISTRICT COURT

WESTERN DISTRICT OF NORTH CAROLINA

ABDUL INVESTMENTS, LLC,

*Plaintiff*,

v.

JOHN SHAHEEN,

*Defendant.*

IN THE GENERAL COURT OF JUSTICE
CHARLOTTE DIVISION
_____
(DEMAND FOR JURY TRIAL)

## COMPLAINT FOR DECLARATORY JUDGMENT

**COMES NOW** Plaintiff, Abdul Investments, LLC, by and through undersigned counsel, and complaining of Defendant alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Abdul Investments, LLC, is a North Carolina limited liability company and the borrower in this matter, with a principal place of business of 12659 Lahinch Ct., Charlotte, NC 28277.

2.    Upon information and belief, Defendant John Shaheen, the lender in this matter, is a citizen and resident of Indian Land, South Carolina.

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the Plaintiff and Defendant, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.    This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391.

### FACTUAL ALLEGATIONS

5.    The allegations of Paragraphs 1 through 3 are hereby realleged and incorporated by reference.

6.    On or about December 3, 2021, Plaintiff entered into a promissory note (the "Note") and a deed of trust (the "Deed of Trust") with Defendant for a loan in the principal amount of FOUR HUNDRED

TEN THOUSAND DOLLARS ($410,000.00), secured by real property located at 702 North Polk Street, Pineville, NC 28134 (the "Property"). The Note and Deed of Trust are attached to this document as **Exhibit A** and **Exhibit B**.

7.     In addition to the real property, the loan is also secured by "[a] All buildings, structures, improvements, fixtures, fittings, building materials, machinery, furniture, furnishings, appliances, materials, equipment, accounts, contract rights, general intangibles, inventory, leasehold interests, plans and specifications and all other tangible and intangible personal property of every kind and description whether now owned or hereafter acquired, which were, are, or hereafter are owned or hereafter acquired, which were, are, or hereafter are located on or associated with the operation and use of…" the Property, as described in "Exhibit A" attached to the original Note and Deed of Trust.

8.     The Note contains a provision stating that the loan is "payable on demand", meaning that Defendant, as the lender, may demand full repayment of the loan at any time, regardless of whether the borrower has made regular payments as scheduled.

9.     The Note also specifies a regular payment schedule, under which Plaintiff has been making payments in the amount of TWO THOUSAND SEVEN HUNDRED THIRTY-THREE and 33/100 DOLLARS ($2,733.33) on a monthly basis since the loan was executed. The payment schedule on the Note specifies that Plaintiff shall make payments through December 2, 2031 (the "Maturity Date").

10.    Plaintiff has regularly made required payments according to the payment schedule, and Defendant has accepted each payment without objection or demand for early repayment. However, Defendant stopped cashing the tendered payments, causing Plaintiff to be in a state of duress about being defaulted on the note. This resulted in a meeting between the parties where Defendant insisted upon a loan modification and Plaintiff paid Defendant a large payment that Defendant had previously received but had not cashed.

11.    On or about July 10, 2024, the parties entered into a Modification and Extension Agreement (the "Modification Agreement"), which amended and ratified the Note and Deed of Trust. The Modification Agreement's amendments are as follows:

a.  Shortened the Maturity Date of the Note to July 1, 2029 (the "New Maturity Date);

b.  Created a new monthly payment schedule for sixty (60) months and increased payments from Two Thousand Seven Hundred Thirty-Three and 33/100 Dollars ($2,733.33) to FOUR THOUSAND FOUR HUNDRED FIVE AND 88/100 DOLLARS ($4,405.88);

c.  One (1) final balloon payment of THREE HUNDRED THIRTY-SIX THOUSAND ONE HUNDRED SEVENTY-SIX AND 48/100 DOLLARS ($336,176.48);

d.  Increased the interest rate from EIGHT PERCENT (8.00%) per annum to TEN PERCENT (10.00%) per annum.

The Modification Agreement is attached to this document as **Exhibit C**.

12.  The Modification Agreement establishes that payments are current so long as the payments listed on the amortization schedule are made in a timely manner to Defendant.

13.  On or about September 26, 2024, Defendant notified Plaintiff via a demand letter (the "Demand Letter") of its intention to invoke the "payable on demand" clause and demand full repayment of the loan, despite Plaintiff being current on the regular payments. The Demand Letter is attached to this document as **Exhibit D**.

14.  Plaintiff asserts that Defendant's invocation of the "payable on demand" clause is in bad faith, as Defendant has knowingly accepted regular payments for a significant period and never previously indicated any intention to call the loan.

15.  Plaintiff further asserts that Defendant's demand for immediate repayment is arbitrary and inconsistent with the parties' established course of conduct, and as such, constitutes a breach of the implied duty of good faith and fair dealing.

16.  Plaintiff believes that Defendant's actions are unfair, unconscionable, and contrary to the expectations set by the regular payment schedule, and therefore seeks a declaration from this Court regarding the enforceability of the "payable on demand" clause.

## FIRST CLAIM FOR RELIEF
## DECLARATORY JUDGMENT

17.     The allegations in Paragraphs 1 through 15 are hereby realleged and incorporated by reference.

18.     Under 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, a party may seek a declaratory judgment to determine the validity and scope of a contract, including any disputes regarding the meaning and enforceability of contract terms.

19.     The Modification Agreement created a binding contract between the parties that supersedes the demand provision of the Original Note. The omission of demand language in the Modification Agreement constitutes a material change in the nature of the obligation, transitioning the loan from being callable at any time to a loan with a fixed repayment schedule.

20.     Plaintiff seeks this declaratory judgment to establish the legal effect of the Modification Agreement and to affirm that the loan is no longer a demand note under the terms of the modified agreement. Specifically, Plaintiff requests that the Court declare:

   a.  That the Modification Agreement is valid and enforceable, and that it governs the terms of the loan;

   b.  That the maturity date of the loan is July 2029, as modified by the parties;

   c.  That the loan is no longer subject to a demand provision, and that the loan must be repaid in accordance with the fixed repayment schedule and amortization plan set forth in the Modification Agreement;

   d.  That the Modification Agreement supersedes the Original Note in its entirety, including the demand clause, and governs the repayment terms of the loan going forward;

   e.  That Plaintiff is entitled to rely on the Modification Agreement and the absence of a demand provision in its repayment obligations.

21.     Plaintiff has a legitimate interest in obtaining a declaratory judgment to ensure clarity and avoid any future disputes regarding the repayment obligations, the maturity date, and the nature of the loan as modified by the parties.

**SECOND CLIAM FOR RELIEF (IN THE ALTERNATIVE)**
**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

22.     The allegations in Paragraphs 1 through 20 are hereby realleged and incorporated by reference.

23.     Under the terms of the Note, the "payable on demand" clause grants Defendant the right to demand the full repayment of the loan at any time. However, Plaintiff asserts that Defendant's acceptance of regular monthly payments over a significant period, without previously invoking the demand provision, has resulted in a waiver of Defendant's right to call the loan.

24.     Plaintiff asserts that despite Defendant accepting Plaintiff's payments tendered properly and in a timely manner, Defendant has now refused to accept monthly payments from Plaintiff and has refused to cash payments that were sent to Defendant from Plaintiff in a timely manner. This placed Plaintiff in a situation of distress that they would lose their livelihood and business after Defendant threatened foreclosure and subsequently forced the Modification Agreement to the earlier Maturity Date. This was done in bad faith by Defendant and resulted in a breach of the implied duty of good faith and fair dealing.

25.     Plaintiff further asserts that Defendant's failure to invoke the demand provision in a timely manner constitutes laches, as Defendant's prolonged inaction has created a reasonable expectation in Plaintiff that the loan would be repaid according to the established regular payment schedule.

26.     Plaintiff also asserts that Defendant's invocation of the "payable on demand" clause after accepting regular payments constitutes a violation of the implied duty of good faith and fair dealing under North Carolina law, which prohibits a party from exercising contractual rights in an arbitrary, capricious, or unreasonable manner.

27.     Plaintiff is entitled to a declaration from this Court that:

    a.   Defendant has waived its right to demand repayment of the loan by regularly accepting payments without objection;

    b.   Defendant's invocation of the "payable on demand" clause is invalid and unenforceable due to bad faith, waiver, and lack of notice or proper justification;

    c.   Plaintiff is not obligated to pay the full amount of the loan at this time and may continue making payments according to the established payment schedule.

28.     Plaintiff's request for declaratory relief is necessary to clarify the rights and obligations of the parties under the loan agreement and to avoid the continued uncertainty and potential harm arising from Defendant's actions.

### THIRD CLAIM FOR RELIEF
### PRELIMINARY INJUNCTION OF FORECLOSURE

29.     The allegations in Paragraphs 1 through 27 are hereby realleged and incorporated by reference.

30.     Plaintiff respectfully requests that the Court issue a preliminary injunction to temporarily halt any action involving foreclosure proceedings on the Property, pending the resolution of this matter.

31.     Plaintiff asserts that a foreclosure would be wrongful and that proceeding with the sale of the Property would cause irreparable harm, as the Property is at risk of being sold without proper legal justification.

32.     Plaintiff is likely to succeed on the merits of this case, and the balance of equities favors halting the foreclosure to protect Plaintiff's rights and prevent further injury.

33.     Plaintiff requests that the Court enjoin the Defendant from initiating any foreclosure proceedings on the Property until this action is resolved.

WHEREFORE, Plaintiff requests and prays that:

1. If the Court finds that the demand clause is not retained under the Modification Agreement:

   a. Issue a declaratory judgment confirming that the Modification Agreement is binding, enforceable, and governs the terms of the loan, including the elimination of the demand provision;

   b. Declare that the loan matures in July 2029 and is not subject to demand repayment;

   c. Declare that the loan is to be repaid in accordance with the firm repayment plan and amortization schedule set forth in the Modification Agreement;

   d. Award Plaintiff any further relief the Court deems just and proper, including attorneys' fees and costs.

2. In the alternative, if the Court finds that the demand clause is retained, Plaintiff requests and prays:

   a. For a declaration that Defendant has waived its right to invoke the "payable on demand" clause by accepting regular payments over an extended period of time;

   b. For a declaration that Defendant's attempt to demand full repayment of the loan is in bad faith and is therefore unenforceable;

   c. For a declaration that Plaintiff is entitled to continue making payments according to the regular payment schedule, and is not required to pay the full loan balance at this time;

3. This Court grant Plaintiff's request for a preliminary injunction of foreclosure, pending the result of this action;

4. For an award of attorney's fees and costs of this action, as allowed by law or contract;

5. For such other and further relief as this Court may deem just and proper.

Respectfully submitted this the 8th day of January, 2025.

THE COOPER LEGAL FIRM, PC

Stephanie DeMaioribus, Esq. (50362)
Brady Mullis, Esq. (61824)
5620 Concord Parkway S, Suite 103
Concord, NC 28027
(704) 940-3236
(704) 940-3235 Facsimile
sc@cooperlegalfirm.com
brady@cooperlegalfirm.com
*Attorneys for Plaintiff*

# Exhibit A

PROMISSORY NOTE

Charlotte, North Carolina

December 2, 2021

**$ 410,000.00**

FOR VALUE RECEIVED the undersigned Maker(s), jointly and severally, promise to pay to **JOHN E. SHAHEEN** or order, the principal sum of **FOUR HUNDRED TEN THOUSAND AND NO/100 DOLLARS** ($410,000.00), with interest from December 2, 2021, at the rate of **EIGHT PERCENT (8.0000%)** per annum as reflected in the payment terms below on the unpaid balance until paid or until default, both principal and interest payable in lawful money of the United States of America, at , or at such other place as the legal holder hereof may designate in writing. It is understood and agreed that additional amounts may be advanced by the holder hereof as provided in the instruments, if any, securing this Note and such advances will be added to the principal of this Note and will accrue interest at the above specified rate of interest from the date of advance until paid. The principal and interest shall be due and payable as follows:

> Beginning on January 2, 2022, and continuing on the same day of each consecutive month thereafter until paid in full in accordance with the terms hereof, single monthly payments of interest only in the amount of **Two Thousand Seven Hundred Thirty Three and 33/100 Dollars ($2,733.33)**. The outstanding principal and any accrued and unpaid interest shall be due and payable in full within ninety (90) days **UPON DEMAND** of the holder hereof, but in no case later than December 2, 2031 (the "Maturity Date").

Additional Provisions:

1. Borrower may prepay this Note, in whole or in part at any time without premium or penalty. If payable in installments, each such installment shall, unless otherwise provided, be applied first to payment of interest then accrued and due on the unpaid principal balance, with the remainder applied to the unpaid principal.

2. In the event of (a) default in payment of any installment of principal or interest hereof as the same becomes due and such default is not cured within ten (10) days from the due date thereof, or (b) default under the terms of any instrument securing this note, and such default is not cured within fifteen (15) days after written notice to Maker, the holder may, without further notice, declare the remainder of the principal sum, together with all interest accrued thereon, at once due and payable. Failure to exercise this option shall not constitute a waiver of the right to exercise the same at any other time. The unpaid principal of this Note and any part thereof, accrued interest, and all other sums due under this Note and the Deed of Trust, shall bear interest at the rate of Eighteen percent (18.0000%) per annum after default until paid.

3. All parties to this Note, whether maker, surety, endorser, or guarantor, hereby waive protest, presentment notice of dishonor, and notice of acceleration of maturity and agree to continue to remain bound for the payment of principal, interest, and all other sums due under this Note and the Deed of Trust notwithstanding any change(s) by way of release, surrender, exchange, modification, or substitution of any security for this Note, or by way of any extension(s) of time for the payment of principal and interest; all such parties further waive all and every kind of notice of such change or changes and agree that the same may be made without notice or consent of any of them.

4. Upon default, the holder of this Note may employ an attorney to enforce the holder's rights and remedies, and the makers, principals, sureties, guarantors and endorsers of this Note, jointly and severally, hereby agree to pay the holder's reasonable attorney's fees and expenses incurred by the holder in exercising any of the holder's rights upon default under this Note and the Deed of Trust. The rights and remedies of holder as provided in this Note and any other instrument securing this Note shall be cumulative and may be pursued singly, successively, or together against the property described in the Deed of Trust, or any other funds, property, or security held by the holder for payment or security, in the sole discretion of the holder. The failure to exercise any such right or remedy shall not be a waiver or release of such rights or remedies or the right to exercise any of them at another time.

5. This note is to be governed and construed in accordance with the laws of the State of North Carolina.

6. This note is given by **ABDUL INVESTMENTS, LLC**, a North Carolina limited liability company, and is secured by a **DEED OF TRUST** on the Property located at **702 NORTH POLK STREET, PINEVILLE, NORTH CAROLINA 28134**, and which is a **FIRST** lien upon the property therein described.

7. If this Note is a demand instrument, then the statement of a maturity date, the requirement for periodic payments of principal and/or interest, or the recitation of defaults and the right of the holder to declare this Note due and payable upon any such default shall not constitute an election by the holder to waive its right to demand payment at any time as specified in any demand or call provision as the holder in its sole discretion may deem appropriate. The proceeds of this Note shall be used solely to acquire or carry on a business, professional, investment, or commercial enterprise or activity.

> IN WITNESS WHEREOF, each of the undersigned has hereunto set his or her hand and seal or caused this Note to be signed and sealed in its name by a person or persons duly authorized, all as of the date of this Note.

**Maker:**

**ABDUL INVESTMENTS, LLC**
a North Carolina limited liability company

By: _____ (SEAL)
Hala R. Abdul, Manager

# Exhibit B

For Registration
Fredrick Smith
Register of Deeds
Mecklenburg County, NC
Electronically Recorded
2021 Dec 03 12:37 PM      RE Excise Tax: $ 0.00
Book: 36832      Page: 857 ‑ 869      Fee: $ 64.00
Instrument Number:      2021228937

*Fredrick Smith*

**Prepared by and return to:**
Law Office of Paul H. Bass, PLLC (JMP)
16928 Lancaster Hwy, Ste 109
Charlotte, NC 28277

### DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

#### (FUTURE ADVANCES)

#### (COLLATERAL IS OR INCLUDES FIXTURES)

#### (THIS DOCUMENT SERVES AS A FIXTURE FILING UNDER SECTION 9-502 OF THE UNIFORM COMMERCIAL CODE.)

SATISFACTION: The debt secured by the within Deed of Trust
together with the note(s) secured thereby has been satisfied in full.
This the _____ _____ day of _____ , 20 _____
Signed: _____

_urban title_

Parcel Identifier No. 207-091-01 Verified by: _____ _____ County on the _____ day of _____ 20_
By: _____

Mail/Box to: Beneficiary
This instrument was prepared by: Law Office of Paul H. Bass, PLLC, 16928 Lancaster Hwy, Ste 109, Charlotte, NC 28277
Brief description for the Index: 702 N. Polk Street, Pineville, NC

THIS DEED of TRUST is made as of the 2nd day of December, 2021, by and between:

| GRANTOR | TRUSTEE | BENEFICIARY |
|---|---|---|
| **Abdul Investments, LLC**, a North Carolina limited liability company | **Paul H. Bass, Esq.** | **John E. Shaheen** |
| **Mailing Address:**<br>12659 Lahinch Ct<br>Charlotte, NC 28277 | **Mailing Address:**<br>16928 Lancaster Hwy, Ste 109<br>Charlotte, NC 28277 | **Mailing Address:**<br>16928 Lancaster Hwy, Ste 109<br>Charlotte, NC 28277 |

Enter in appropriate block for each party: name address, and, if appropriate, character of entity, e.g. corporation or partnership

Page 1 of 13

Submitted electronically by "Law Office of Paul H. Bass, PLLC"
in compliance with North Carolina statutes governing recordable documents
and the terms of the submitter agreement with the Mecklenburg County Register of Deeds.

The designation Grantor, Trustee, and Beneficiary as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, That whereas the Grantor is indebted to the Beneficiary in the principal sum of **FOUR HUNDRED TEN THOUSAND AND 00/100 DOLLARS ($410,000.00)**, together with interest thereon, as evidenced by a Promissory Note of even date herewith, the terms of which are incorporated herein by reference (as the same may be amended, supplemented, modified, restated and replaced from time to time, the "Note"). The final due date for payments of said Note, if not sooner paid, is **December 2, 2031**.

NOW, THEREFORE, as security for (i) said indebtedness, advancements and other sums expended by Beneficiary pursuant to this Deed of Trust; (ii) costs of collection (including attorneys' fees as provided in the Note); (iii) the performance of all terms, conditions and covenants set forth herein or in the Note; (iv) the repayment of all reimbursement obligations due or that may become due under or in connection with any present or future letters of credit issued by Beneficiary for the account of Grantor in connection with the loan secured by this Deed of Trust; and (v) any and all advances made by Beneficiary to protect or preserve the Premises, or for environmental assessments, environmental remediation, taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Grantor's obligations hereunder or any other purpose provided herein (whether or not the original Grantor remains the owner of the Premises at the time of such advances); and (vi) other valuable consideration, the receipt of which is hereby acknowledged, the Grantor has bargained, sold, given and conveyed and does by these presents DOES HEREBY GRANT, BARGAIN, SELL, TRANSFER, SET OVER, CONVEY, WARRANT AND ASSIGN TO TRUSTEE, ITS SUCCESSORS AND ASSIGNS, all of Grantor's right, title and interest now owned or hereafter acquired in and to each of the following (collectively, the "Property"):

     A.     That certain parcel(s) of land situated in the **City of Pineville, Mecklenburg County, North Carolina** (the "Premises"), and more particularly described as follows:

> **Being all of lots 16, 17 and 18 of TOM HALL PARK SUBDIVISION, as shown on a map thereof Recorded in Map Book 4, page 543 of the Mecklenburg County Register of Deeds.**
>
> *For Information Purposes Only:*
>
> 702 N. Polk Street, Pineville NC 28134; PIN 207-091-01

     B.     Any and all buildings and improvements now or hereafter erected on, under or over the Premises (the "Improvements");

     C.     Any and all fixtures, machinery, equipment and other articles of real, personal or mixed property, belonging to Grantor, at any time now or hereafter installed in, attached to or situated in or upon the Premises, or the buildings and other Improvements now or hereafter erected thereon, or used or intended to be used in connection with the Premises, or in the operation of any of the Improvements or any business situated thereon, whether or not such real, personal or mixed property is or shall be affixed thereto, and all replacements, substitutions and proceeds of the foregoing, including: (i) all appliances, furniture and furnishings; all articles of interior decoration, floor, wall and window coverings; (ii) all office, restaurant, bar, kitchen and laundry fixtures, utensils, appliances and equipment; (iii) all supplies, tools and accessories; all storm and screen windows, shutters, doors, decorations, awnings, shades, blinds, signs, trees, shrubbery and other plantings; (iv) all building service fixtures, machinery and equipment of any kind whatsoever; (v) all lighting, heating, ventilating, air conditioning, refrigerating, sprinkling, plumbing, security, irrigating, cleaning, incinerating, waste disposal, communications, alarm, fire prevention and extinguishing systems, fixtures, apparatus, machinery and equipment; (vi) all elevators, escalators, lifts, cranes, hoists and platforms; (vii) all pipes, conduits, pumps, boilers, tanks, motors, engines, furnaces and compressors; (viii) all dynamos, transformers and generators; (ix) all building materials, building machinery and building equipment delivered on site to the Real Estate during the course of, or in connection with any construction, repair, renovation or restoration of the buildings and improvements; (x) all parts, fittings, accessories, accessions, substitutions and replacements therefor and thereof; and (xi) all files, books, ledgers, reports and records relating to any of the foregoing (collectively, the "Service Equipment");

     D.     Any and all leases, subleases, tenancies, licenses, occupancy agreements or agreements to lease all or any portion of the Premises, Improvements, Service Equipment or all or any other portion of the Property and all extensions, renewals, amendments, modifications and replacements thereof, and any options, rights of first refusal or guarantees relating thereto (collectively, the "Leases"); all rents, income, receipts, revenues, security deposits, escrow accounts, reserves, issues, profits, awards and payments of any kind payable under the Leases or otherwise arising from the Premises, Improvements, Service Equipment or all or any other portion of the Property including minimum rents, additional rents, percentage rents, garage rents, parking fees and charges, maintenance fees and charges, deficiency rents, liquidated damages following default under the

Leases and all proceeds payable under any policy of insurance, if any, covering loss of rents resulting from untenantability caused by damage to any part of the Premises, together with any and all rights that Grantor may have against any tenant under such Leases or any subtenants or occupants of any part of the Premises and any award made hereafter to Grantor in any court proceeding involving any of the tenants or in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court, and all payments by tenants in lieu of rent (collectively, the "Rents");

E.  Any and all rights of Grantor to the present or future payment of money, if the amounts to be paid relate to the use, maintenance, repair or operation of the Premises or to any construction on, or leasing at, or sale of the Premises, and all of Grantor's rights to any such amounts held by or deposited with banks, savings and loan institutions, brokerage firms or other financial institutions, title insurance companies or agencies, or courts; including, to the extent that they relate to the use or operation of the Premises or to any construction on the Premises, the following items: all books of account, including property management accounts (whether held in the name of Grantor or of a property manager), accounts receivable, reserves, deferred payments, escrow funds, disputed Rents, refunds (including tax, insurance and utility rebates, credits and refunds), earnest money or sales contract deposits, chattel paper, securities entitlements, instruments, documents, notes, drafts and letters of credit (other than letters of credit in favor of Beneficiary) (collectively, the "Assigned Accounts");

F.  Any and all of Grantor's rights (whether presently existing or arising in the future) under all contracts, claims, permits, approvals and licenses, and all other general intangibles, that relate to the Premises and may benefit its owner, including claims against third parties for damages to the Property, franchises, construction, roof and equipment guarantees and warranties, building licenses and permits, development permits, licenses and applications (whether or not yet approved or issued) management contracts, service contracts, franchise agreements, utility agreements and deposits, building service contracts, maintenance contracts, construction contracts, architects agreements, leases of Service Equipment or other personal property, and all of Grantor's right, title and interest (whether presently existing or arising in the future) in and to unearned insurance premiums, any greater estate in the Premises, trade names, property management files, trademarks, trade styles, service marks, copyrights, accounting books and records, site plans, maps, surveys, blueprints, and construction drawings, plans and specifications, and the work product of architects, environmental consultants, property tax consultants, engineers and any other third party contractors whose services benefit the Premises (collectively, the "Assigned Rights").

G.  Any and all estates, rights, tenements, hereditaments, privileges, easements, reversions, remainders and appurtenances of any kind benefiting or appurtenant to the Premises, Improvements or all or any other portion of the Property; all means of access to and from the Premises, Improvements or all or any other portion of the Property, whether public or private; all streets, alleys, passages, ways, water courses, water, air and mineral rights relating to the Premises, Improvements or all or any other portion of the Property; all rights of Grantor as declarant or a lot owner under any declaration or association applicable to the Premises, Improvements or all or any other portion of the Property including all development rights and special declarant rights; and all other claims or demands of Grantor, either at law or in equity, in possession or expectancy of, in, or to the Premises, Improvements or all or any other portion of the Property (collectively, the "Appurtenances"); and

H.  Any and all of the following, whether now owned or hereafter acquired, wherever located (all capitalized terms have the respective meanings given such terms in the Code): As-Extracted Collateral; cash and currency; Chattel Paper (whether Electronic Chattel Paper or Tangible Chattel Paper); Commercial Tort Claims; Documents; Equipment; Farm Products; General Intangibles, including, but not limited to, Copyrights, Copyright Licenses, Patents, Patent Licenses, Payment Intangibles, tax refunds, Trademarks and Trademark Licenses; Goods (other than Equipment and Inventory); Instruments; Inventory; Investment Property; Letter of Credit Rights; Securities accounts and Securities Entitlements; Software and software licenses (the "Other Collateral");

I.  Any and all "proceeds" of any of the above-described Premises, Improvements, Service Equipment, Leases, Rents, Assigned Accounts, Assigned Rights, Appurtenances, and Other Collateral, which term "proceeds" shall have the meaning given to it in the Uniform Commercial Code, as amended (the "Code"), of the State in which the Property is located and shall additionally include whatever is received upon the use, lease, sale, exchange, transfer, collection or other utilization or any disposition or conversion of any of the Premises, Improvements, Service Equipment, Leases, Rents, Assigned Accounts, Assigned Rights, Appurtenances, or Other Collateral, voluntary or involuntary, whether cash or non-cash, including Insurance Proceeds (defined herein) and Condemnation Proceeds (defined herein), rental or lease payments, accounts, chattel paper, instruments, documents, contract rights, general intangibles, equipment and inventory, (collectively, the "Proceeds"). Condemnation Proceeds include all money or other property that has been, or is in the future, awarded or agreed to be paid or given in connection with any taking by eminent domain of all or any part of the Premises (including a taking through the vacation of any street dedication or through a change of grade of such a street), either permanent or temporary, or in connection with any purchase in lieu of such a taking, or as part of any related settlement. Insurance Proceeds include all Proceeds of all insurance now or hereafter carried by or payable to Grantor with respect to the Property, or the interruption of rents or income derived

from the Property, all unearned insurance premiums and all related claims or demands.

TO HAVE AND TO HOLD the same, together with all the hereditaments and appurtenances thereunto belonging or otherwise appertaining, including all rights of homestead, unto the said Trustee, its successors and assigns forever upon the trusts, terms and conditions, and for the uses hereinafter set forth.

AS FURTHER SECURITY, Grantor hereby pledges, assigns and grants to Beneficiary a continuing security interest in all of Grantor's right to the property described above ((B) through (I) above being collectively referred to as the "Personal Property").

Beneficiary also desires and intends for this Deed of Trust to secure and make certain the payment of the Note, and any and all renewals, modifications and extensions thereof, in whole or in part and also the payment and performance of Grantor's obligations hereunder.

If the Grantor shall pay the Note secured hereby in accordance with its terms, together with interest thereon, and any renewals or extensions thereof in whole or in part, all other sums secured hereby and shall comply with all of the covenants, term and conditions of this Deed of Trust, then this conveyance shall be null and void and may be canceled of record at the request and the expense of the Grantor.

NOW, THEREFORE, so long as any part of the Grantor's obligations hereunder shall remain unpaid or unperformed, the said Grantor does hereby covenant and agree with the Trustee as follows:

1.    INSURANCE. Grantor shall keep all improvements on said land, now or hereafter erected, constantly insured for the benefit of the Beneficiary against loss by fire, windstorm and such other casualties and contingencies, in such manner and in such companies and for such amounts, not less than that amount necessary to pay the sum secured by this Deed of Trust, and as may be satisfactory to the Beneficiary. Grantor shall purchase such insurance, pay all premiums therefor, and shall deliver to Beneficiary such policies along with evidence of premium payments as long as the Note secured hereby remains unpaid If Grantor fails to purchase such insurance, pay premiums therefor or deliver said policies along with evidence of payment of premiums thereon, then Beneficiary, at his option, may purchase such insurance. Such amounts paid by Beneficiary shall be added to the principal of the Note secured by this Deed of Trust and shall be due and payable upon demand of Beneficiary. All proceeds from any insurance so maintained shall at the option of Beneficiary be applied to the debt secured hereby and if payable in installments, applied in the inverse order of maturity of such installments or to the repair or reconstruction of any improvements located upon the Property.

2.    TAXES, ASSESSMENTS, CHARGES. Grantor shall pay all taxes, assessments and charges as may be lawfully levied against said Premises within thirty (30) days after the same shall become due. In the event that Grantor fails to so pay all taxes, assessments and charges as herein required, then Beneficiary, at his option, may pay the same and the amounts so paid shall be added to the principal of the Note secured by this Deed of Trust, and shall be due and payable upon demand of Beneficiary.

3.    ASSIGNMENTS OF RENTS AND PROFITS.

A.    Assignment of Rents and Leases. All of the Rents, revenue, deposits, escrow accounts, and any other benefits derived from the Premises or arising from the use or enjoyment of any portion thereof or from any existing or future lease or agreement pertaining thereto and liquidated damages following default under such Leases, and all proceeds payable under any policy of insurance, if any, covering loss of rents resulting from untenantability caused by damage to any part of the Premises, together with any and all rights that Grantor may have against any tenant under such Leases or any subtenants or occupants of any part of the Premises and any award made hereafter to Grantor in any court proceeding involving any of the tenants or in any bankruptcy, insolvency, or reorganization proceedings in any state or federal court, and all payments by tenants in lieu of Rent, are hereby absolutely and unconditionally assigned to Beneficiary, to be applied by Beneficiary in payment of Grantor's obligations hereunder. Grantor hereby further assigns to Beneficiary, as security hereunder, any and all future Leases, including subleases, any and all extensions, renewals, modifications, and replacements thereof, and all guaranties of tenants' performance thereunder, upon any part of the Premises and Improvements. It is understood and agreed by the parties that this assignment is intended to be and is an absolute assignment from Grantor to Beneficiary, and not merely the passing of a security interest; provided, however, that Beneficiary does hereby, until an event of default occurs, grant Grantor a license, without joinder of Beneficiary, to enforce the Leases and to collect the Rents as they come due and to retain, use and enjoy the same, but no Rents, issues, or profits not due under the terms of any of the Leases or rental or other arrangements shall be collected or accepted by Grantor

Page 4 of 13

without the prior written consent of Beneficiary. Grantor shall, upon request of Beneficiary, execute confirmatory assignments of any specific Leases affecting any part of the Premises and a separate, recordable assignment of rents and leases, which shall be in addition to and not in replacement of this assignment. Grantor shall receive and hold such Rents in trust as a fund to be applied, and Grantor hereby covenants and agrees that such Rents shall be so applied, first to the operation, maintenance and repair of the Property and the payment of interest, principal and other sums becoming due under Grantor's obligations hereunder, before retaining and/or disbursing any part of the rents for any other purpose. The license herein granted to Grantor shall automatically, without notice or any other action by Beneficiary, terminate upon the occurrence of an event of default, and all Rents subsequently collected or received by Grantor during the continuance of such event of default shall be held in trust by Grantor for the sole and exclusive benefit of Beneficiary. Nothing contained in this Section 3, and no collection by Beneficiary of Rents, shall be construed as imposing on Beneficiary any of the obligations of the lessor under the Leases.

B.  _Representations and Warranties._ Grantor shall timely perform all of its obligations under the Leases. Grantor represents and warrants that: (a) Grantor has title to and full right to assign presently, absolutely and unconditionally the Leases and Rents; (b) no other assignment of any interest in any of the Leases or Rents has been made; (c) there are no parties in possession of or oral or unrecorded leases affecting the Property except as disclosed to Beneficiary; (d) to Grantor's knowledge, there is no existing default by Grantor or by any tenant under any of the Leases, nor has any event occurred which due to the passage of time, the giving or failure to give notice, or both, would constitute a default under any of the Leases and, to the best of Grantor's knowledge, no tenant has any defenses, set-offs or counterclaims against Grantor; and (e) Grantor has not accepted Rent under any Lease more than one (1) month in advance of its accrual, and payment thereof has not otherwise been forgiven, discounted or compromised.

C.  _No Obligation Upon Beneficiary._ Beneficiary's acceptance of the assignment of Leases and Rents provided for herein shall not obligate Beneficiary to appear in nor defend any proceeding relating to any of the Leases or to the Premises, take any action hereunder, expend any money, incur any expenses, or perform any obligation or liability under the Leases, or assume any obligation for any deposits delivered to Grantor by any tenant. Beneficiary shall not be liable for any injury or damage to person or property in or about the Premises. Grantor shall indemnify Beneficiary against and hold it harmless from all costs, expenses, damages, liabilities, losses, claims and expenses (including attorneys' fees and disbursements) which are incurred by Beneficiary with respect to any injury or damage to person or property in or about the Premises from whatever cause.

D.  _Prohibited Actions._ Grantor shall not, without the prior written consent of Beneficiary: (a) agree to any amendment, renewal or other modification of the terms and conditions of any Lease that reduces the term thereof or the rent due thereunder or otherwise materially increases the responsibilities or obligations of Grantor (as landlord) or materially decreases the responsibilities or obligations of the tenant thereunder; (b) terminate, cancel or accept a surrender of any Lease; (c) collect or accept rent from any tenant of the Property for a period of more than one (1) month in advance; and (d) enter into any new Lease or an extension of any existing Lease with respect to the Property. Any of the foregoing acts, if done without the prior written consent of Beneficiary in each instance, shall be null and void. Upon the execution of any Lease, or of any amendment or modification of any Lease permitted hereunder, Grantor shall promptly provide Beneficiary with a fully executed copy thereof.

E.  _Additional Provisions._ (a) all Leases entered into by Grantor from and after the date hereof shall be with tenants unaffiliated with Grantor, shall be on arms-length terms and conditions, shall be at annual rents at least comparable to the market rents then being paid for comparable premises in the vicinity of the Property and shall be previously approved in writing by Beneficiary; (b)    any Lease entered into by Grantor from and after the date hereof and each renewal of an existing Lease (excluding, however, a renewal pursuant to an option contained in an existing Lease) shall expressly state that it is subject and subordinate in all respects to: (i) this Deed of Trust, all terms and conditions hereof, and the lien created hereby, and to any renewals hereof, including any increase in the principal amount secured by this Deed of Trust, and any increase in the interest rates set forth in the Note; and (ii) each and all of the rights of Beneficiary or any holder of this Deed of Trust. In addition, Grantor shall request that each tenant, upon request of Beneficiary, promptly execute and deliver a subordination, non-disturbance and attornment agreement in Beneficiary's standard form, which is subject to reasonable changes by Beneficiary in order to conform to local law and/or Beneficiary's then current standards and guidelines; (c) within twenty (20) days after a written request from Beneficiary, Grantor shall obtain from any tenant, and deliver to Beneficiary, a fully executed estoppel certificate in Beneficiary's standard form, and addressing such other additional matters as Beneficiary reasonably requires (the "Estoppel Certificate"); (d) Grantor, within five (5) days after obtaining knowledge thereof, shall notify Beneficiary of: (i) the termination of any Lease; (ii) the receipt or submission by Grantor of any notice of default under or of any notice of any action or proceeding regarding any Lease which may, in Grantor's judgment, materially and adversely

affect the Property; and (iii) any tenant abating or reducing the rent payable under such tenant's Lease; (e) upon written notice, but not more frequently than annually, Grantor shall deliver to Beneficiary a counterpart original or a copy of every Lease and any amendments with respect to which a counterpart original or copy has not previously been furnished to Beneficiary, and such other information as Beneficiary may reasonably request; and (f) all rights granted to Beneficiary and all obligations imposed on Grantor under this Section are in addition to, and not in lieu of, similar rights that may be granted and obligations that may be imposed under any separate assignment of rents and leases from Grantor to Beneficiary.

4.      SECURITY AGREEMENT.

      A.      Security Interest. This Deed of Trust constitutes a security agreement under the Code, as amended, and shall be deemed to constitute a fixture filing financing statement. As security for the prompt and complete payment and performance when due in full of Grantor's obligations hereunder, Grantor hereby grants to Beneficiary a security interest in the personal and other property (other than real property) included in the Property. The name of the record owner of the real property and improvements is Grantor, as identified in the first paragraph of this Deed of Trust. The name and address of Grantor, as debtor, is set forth in the first paragraph of this Deed of Trust. The name and address of Beneficiary, as secured party, and from whom information concerning the security interest created herein may be obtained, is set forth in the first paragraph of this Deed of Trust. Grantor is the type of entity identified in the first paragraph of this Deed of Trust and is organized under the laws of the State identified in the first paragraph of this Deed of Trust. Grantor shall, at Grantor's own expense, execute, file and refile any financing or continuation statements or other security agreements Beneficiary may require from time to time to perfect, confirm or maintain the lien of and security interest created by this Deed of Trust with respect to such property. A photocopy of an executed financing statement shall be effective as an original. Without limiting the foregoing, Grantor hereby irrevocably appoints Beneficiary attorney-in-fact for Grantor to execute, deliver and file such instruments for or on behalf of Grantor at Grantor's expense, which appointment, being for security, is coupled with an interest and shall be irrevocable. For purposes hereof, Grantor shall be the debtor, Beneficiary shall be the secured party, and the personal and other property (other than real property) included in the Property shall be the collateral.

      B.      Set-Off. Grantor grants to Beneficiary a direct and continuing lien and security interest, as security for all of Grantor's obligations hereunder, in and upon all deposits, balances and other sums credited by or due from Beneficiary to Grantor. If any payment is not made when due under any of the indebtedness secured hereby Documents, after giving regard to applicable grace periods, if any, or if any event of default or other event which would entitle Beneficiary to accelerate the indebtedness secured hereby or the Note occurs, any such deposits, balances or other sums credited by or due from Beneficiary to Grantor, excluding deposits which Grantor is holding in trust or escrow for the sole benefit of third parties in which Grantor has previously designated to Beneficiary as being so held, to the fullest extent permitted by law at any time or from time to time without notice or compliance with any other condition precedent now or hereafter imposed by statute, rule of law, or otherwise, all of which are hereby waived, may be set-off, appropriated and applied by Beneficiary against any and all of Grantor's obligations hereunder, irrespective of whether demand shall have been made and although such obligations may be unmatured, in any such manner as Beneficiary, in its sole and absolute discretion, may determine. The rights of Beneficiary under this section are in addition to and not in limitation of other rights and remedies, including other rights of set-off which Beneficiary may have.

      C.      Representations and Warranties. The Grantor represents and warrants that the Grantor shall have an ownership interest in the Personal Property hereafter acquired, Grantor has the right to encumber the Personal Property and to grant a security interest therein to Beneficiary; and Grantor will forever warrant and defend any security interest its gives to Beneficiary against the lawful claims of all persons subject to the terms set forth herein.

      D.      No Duty Imposed on Beneficiary. The powers conferred on Beneficiary hereunder are solely to protect its interest in the Personal Property and shall not impose any duty upon it to exercise any such powers. Except for the accounting for monies actually received by it hereunder, Beneficiary shall have no duty as to any Personal Property, the preservation or protection of the same or the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Personal Property.

      E.      Perfection of Security Interest. Grantor shall, from time to time, as may be required by Beneficiary with respect to all collateral, immediately take all actions as may be requested by Beneficiary to perfect the security interest of Beneficiary in the collateral described herein at the sole cost and expense of Grantor. Grantor hereby irrevocably authorizes Beneficiary at any time and from time to time to file in any relevant jurisdiction any financing

statements and amendments thereto that contain the information required by Article 9 of the UCC of each applicable jurisdiction for the filing of any financing statement or amendment relating to the Collateral, including any financing or continuation statements or other documents for the purpose of perfecting, confirming, continuing, enforcing or protecting the security interest granted by Grantor hereunder, without the signature of Grantor where permitted by law, including the filing of a financing statement describing the collateral as all assets now owned or hereafter acquired by Grantor, or words of similar effect. Grantor agrees to provide all information required by Beneficiary pursuant to this Section promptly to Beneficiary upon request.

5.    FUTURE ADVANCES. This Deed of Trust shall secure any and all future loan disbursements as well as any and all present or future, advances and readvances made by Beneficiary under the Note and all other sums from time to time owing to the Beneficiary by Grantor including: (a) principal, interest, late charges, fees and other amounts due under this Deed of Trust; (b) all advances by Beneficiary to Grantor or any other person to pay costs of erection, construction, alteration, repair, renovation, restoration, maintenance and completion of any Improvements on the Property; (c) all advances made or costs incurred by Beneficiary for the payment of taxes, maintenance charges, insurance premiums, appraisal charges, environmental inspection, audit, testing or compliance costs, and costs incurred by Beneficiary for the enforcement and protection of the Property or the lien of this Deed of Trust; and (d) all legal fees, costs and other expenses incurred by Beneficiary by reason of any default or otherwise in connection with Grantor's obligations hereunder. Grantor agrees that if, at any time during the term of this Deed of Trust or following a foreclosure hereof (whether before or after the entry of a judgment of foreclosure), Grantor fails to perform or observe any covenant or obligation under this Deed of Trust including payment of any of the foregoing, Beneficiary may (but shall not be obligated to) take such steps as are reasonably necessary to remedy any such nonperformance or nonobservance and provide payment thereof. All such amounts advanced by Beneficiary shall be added to the amount secured by this Deed of Trust (and, if advanced after the entry of a judgment of foreclosure, by such judgment of foreclosure), and shall be due and payable on demand, together with interest at the default rate set forth in the Note, such interest to be calculated from the date of such advance to the date of repayment thereof. The maximum principal amount that may be secured hereby at any one time is Four Hundred Ten Thousand and No/100 Dollars ($410,000.00), excluding all interest, fees, penalties and other charges which may be attributable to Grantor and secured hereunder. The time period within which such future disbursements are to be made is the period between the date hereof and the date that is thirty (30) years beyond the date hereof.

6.    ADVANCES BY BENEFICIARY TO PROTECT COLLATERAL. If the Grantor shall default in paying taxes or assessments, maintaining insurance or making repairs (including without limitation investigating and remediating Hazardous Substances), the Beneficiary may, at its discretion, advance and pay such sums as may be proper to satisfy taxes, maintain insurance and make repairs, and protect and preserve the Premises and Personal Property, and such amounts so paid shall be treated as part of the expenses of administering this pledge of collateral, shall be repaid by Grantor on demand with interest at the default rate set forth in the Note, and shall be secured by the lien hereof. However, the making of any such payment by Beneficiary shall not be construed as a waiver of any default of Grantor.

7.    PARTIAL RELEASE. Grantor shall not be entitled to the partial release of any of the above described property unless a specific provision providing therefor is included in this Deed of Trust. In the event a partial release provision is included in this Deed of Trust, Grantor must strictly comply with the terms thereof. Notwithstanding anything herein contained, Grantor shall not be entitled to any release of property unless Grantor is not in default and is in full compliance with all of the terms and provisions of the Note, this Deed of Trust, and any other instrument that may be securing said Note.

8.    NO MECHANIC'S LIENS. Grantor shall discharge or bond over all claims for labor performed and material furnished to the Premises, and shall not suffer any lien of mechanics or materialmen to be filed against any part of the Premises which is not discharged or bonded over within thirty (30) days. Notwithstanding the foregoing, Grantor shall have the right to contest in good faith (or cause its contractors or tenants to contest) the validity of any such lien, claim or encumbrance provided that (i) such contest has the effect of preventing the collection of such lien, claim or encumbrance during the pendency thereof, and (ii) Grantor posts a bond removing such lien, claim or encumbrance from the Property pending a good faith contest by Grantor. Beneficiary has not consented and will not consent to any contract or to any work or to the furnishing of any materials which might be deemed to create a lien or liens superior to the lien of this instrument, either under the North Carolina General Statutes, or otherwise, unless by signed, recorded writing, which consent it may refuse to give in its sole and absolute discretion.

9.    WASTE. The Grantor covenants that he will keep the Premises herein conveyed in as good order, repair and condition as they are now, reasonable wear and tear excepted, and will comply with all governmental requirements respecting the Premises or their use, and that he will not commit or permit any waste.

10.    CONDEMNATION. In the event that any or all of the Premises shall be condemned and taken under the

Page 7 of 13

power of eminent domain, Grantor shall give immediate written notice to Beneficiary and Beneficiary shall have the right to receive and collect all damages awarded by reason of such taking, and the right to such damages hereby is assigned to Beneficiary who shall have the discretion to apply the amount so received, or any part thereof, to the indebtedness due hereunder and if payable in installments, applied in the inverse order of maturity of such installments, or to any alteration, repair or restoration of the Premises by Grantor.

11.    WARRANTIES. Grantor covenants with Trustee and Beneficiary that he is seized of the Premises in fee simple, has the right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances, and that he will warrant and defend the title against the lawful claims of all persons whomsoever, except for the exceptions hereinafter stated Title to the property hereinabove described is subject to the following exceptions:

(i) ad valorem real property taxes and assessments for the year 2022 and for subsequent years, (ii) all easements, rights-of-way, covenants, conditions, restrictions and other agreements of record, (iii) all matters which would be disclosed by a recent and accurate survey of the property hereby conveyed, and (iv) municipal, zoning and subdivision laws and ordinances.

12.    SUBSTITUTION OF TRUSTEE. Grantor and Trustee covenant and agree to and with Beneficiary that in case the said Trustee, or any successor trustee, shall die, become incapable of acting, renounce his trust, or for any reason the holder of the Note desires to replace said Trustee, then the holder may appoint, in writing, a trustee to take the place of the Trustee; and upon the probate and registration of the same, the trustee thus appointed shall succeed to all rights, powers and duties of the Trustee.

THE FOLLOWING PARAGRAPH, 9. SALE OF PREMISES, SHALL NOT APPLY UNLESS THE BLOCK TO THE LEFT MARGIN OF THIS SENTENCE IS MARKED AND/OR INITIALED.

13.    SALE OF PREMISES. Grantor agrees that if the Premises or any part thereof or interest therein is sold, assigned, transferred, conveyed or otherwise alienated by Grantor, whether voluntarily or involuntarily or by operation of law [other than:(i) the creation of a lien or other encumbrance subordinate to this Deed of Trust which does not relate to a transfer of rights of occupancy in the Premises; (ii) the creation of a purchase money security interest for household appliances; (iii) a transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety; (iv) the grant of a leasehold interest of three (3) years or less not containing an option to purchase; (v) a transfer to a relative resulting from the death of a Grantor; (vi) a transfer where the spouse or children of the Grantor become the owner of the Premises; (vii) a transfer resulting from a decree of a dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the Grantor becomes an owner of the Premises: (viii) a transfer into an inter vivos trust in which the Grantor is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the Premises], without the prior written consent of Beneficiary, Beneficiary, at its own option, may declare the Note secured hereby and all other obligations hereunder to be forthwith due and payable. Any change in the legal or equitable title of the Premises or in the beneficial ownership of the Premises, including the sale, conveyance or disposition of a majority interest in the Grantor if a corporation or partnership, whether or not of record and whether or not for consideration, shall be deemed to be the transfer of an interest in the Premises.

14.    ADVANCEMENTS. If Grantor shall fail to perform any of the covenants or obligations contained herein or in any other instrument given as additional security for the Note secured hereby, the Beneficiary may, but without obligation, make advances to perform such covenants or obligations, and all such sums so advanced shall be added to the principal sum, shall bear interest at the rate provided in the Note secured hereby for sums due after default and shall be due from Grantor on demand of the Beneficiary. No advancement or anything contained in this paragraph shall constitute a waiver by Beneficiary or prevent such failure to perform from constituting an event of default.

15.    INDEMNITY. If any suit or proceeding be brought against the Trustee or Beneficiary or if any suit or proceeding be brought which may affect the value or title of the Premises, Grantor shall defend, indemnify and hold harmless and on demand reimburse Trustee or Beneficiary from any loss, cost, damage or expense and any sums expended by Trustee or Beneficiary shall bear interest as provided in the Note secured hereby for sums due after default and shall be due and payable on demand.

16.    WAIVERS. Grantor waives all rights to require marshaling of assets by the Trustee or Beneficiary. No delay or omission of the Trustee or Beneficiary in the exercise of any right, power or remedy arising under the Note or this Deed of Trust shall be deemed a waiver of any default or acquiescence therein or shall impair or waive the exercise of such right, power

Page 8 of 13

or remedy by Trustee or Beneficiary at any other time.

17.     CIVIL ACTION. In the event that the Trustee is named as a party to any civil action as Trustee in this Deed of Trust, the Trustee shall be entitled to employ an attorney at law, including himself if he is a licensed attorney, to represent him in said action and the reasonable attorney's fee of the Trustee in such action shall be paid by the Beneficiary and added to the principal of the Note secured by this Deed of Trust and bear interest at the rate provided in the Note for sums due after default.

18.     PROTECTION AND PRIORITY OF LIEN. Grantor shall not do anything or suffer or permit anything to be done whereby the lien and security interest of this Deed of Trust could be impaired. In particular (but not by way of limitation), Grantor shall not consent, directly or indirectly, to the inclusion of any portion of the Premises within any improvement district or similar organization which has the authority to levy assessments against the Premises which constitute a lien thereon which is equal or superior to the lien of this Deed of Trust. Nor shall Grantor do anything or suffer or permit anything to be done or omit to do anything which could result in foreclosure of a lien of any kind on any portion of the Premises whether that lien were superior, inferior or equal to that of the Deed of Trust. Default under the terms of any instrument secured by a lien to which this Deed of Trust is subordinate shall constitute default hereunder. None of the provisions of this Section 18 may be waived except by a signed, recordable writing from Beneficiary.

19.     EVENTS OF DEFAULT. If there shall be any default (a) in the payment of any sums due under the Note, this Deed of Trust or any other instrument securing the Note and such default is not cured within ten (10) days from the due date, or (b) if there shall be default in any of the other covenants, terms or conditions of the Note secured hereby, or any failure or neglect to comply with the covenants, terms or conditions contained in this Deed of Trust or any other instrument securing the Note and such default is not cured within fifteen (15) days after written notice, then and in any of such events, without further notice, Beneficiary may take any of the following actions:

A.     Power of Sale. The Trustee, upon request of the Beneficiary, to sell the land herein conveyed at public auction for cash, after having first giving such notice of hearing as to commencement of foreclosure proceedings and obtained such findings or leave of court as may then be required by law and giving such notice and advertising the time and place of such sale in such manner as may then be provided by law, and upon such and any resales and upon compliance with the law then relating to foreclosure proceedings under power of sale to convey title to the purchaser in as full and ample manner as the Trustee is empowered. The Trustee shall be authorized to retain an attorney to represent him in such proceedings. The proceeds of the Sale shall after the Trustee retains his commission, together with reasonable attorneys' fees incurred by the Trustee in such proceedings, be applied to the costs of sale, including, but not limited to, costs of collection, taxes, assessments, costs of recording, service fees and incidental expenditures, the amount due on the Note hereby secured and advancements and other sums expended by the Beneficiary according to the provisions hereof and otherwise as required by the then existing law relating to foreclosures. The Trustee's commission shall be five percent (5%) of the gross proceeds of the sale or the minimum sum of $750.00, whichever is greater, for a completed foreclosure. In the event foreclosure is commenced, but not completed, the Grantor shall pay all expenses incurred by Trustee, including reasonable attorneys' fees, and a partial commission computed on five per cent (5%) of the outstanding indebtedness or the above stated minimum sum, whichever is greater, in accordance with the following schedule, to-wit: one fourth (1/4) thereof before the Trustee issues a notice of hearing on the right to foreclosure; one-half (1/2) thereof after issuance of said notice, three-fourths (3/4) thereof after such hearing; and the greater of the full commission or minimum sum after the initial sale.

B.     Acceleration. Beneficiary may declare the entire amount of Grantor's obligations secured hereunder immediately due and payable, without presentment, demand, notice of any kind, protest or notice of protest, all of which are expressly waived, notwithstanding anything to the contrary contained in the Note. Beneficiary may charge and collect interest from the date of default on the unpaid balance of such obligations at the default rate set forth in the Note. In addition, any and all accelerations of any portion of the remaining principal balance of such obligations (including foreclosure by Beneficiary under this Deed of Trust) shall be subject to any prepayment fee (if any, as defined and described in the Note).

C.     Possession. Beneficiary may enter upon and take possession of the Property, and any Assigned Accounts and Assigned Rights, with or without legal action, lease the Property, collect therefrom all rentals and, after deducting all costs of collection and administration expense, apply the net rentals to any one or more of the following items in such manner and in such order of priority as Beneficiary, in its reasonable discretion, may elect: (a) to the payment of any sums due under any prior lien, taxes, charges and claims, insurance premiums and all other carrying charges; (b) to the maintenance, repair or restoration of the Property; or (c) on account the obligations secured hereby. Beneficiary is

Page 9 of 13

given full authority to do any act which Grantor could do in connection with the management and operation of the Property, including making such repairs, alterations, additions and improvements thereto, and taking any and all other action with reference thereto, from time to time, as Beneficiary deems necessary or desirable. This covenant is effective either with or without any action brought to foreclose this Deed of Trust and without applying for a receiver of such rents. In addition to the foregoing, upon the occurrence and during the continuance of an event of default, Grantor shall pay monthly in advance to Beneficiary or to any receiver appointed to collect said rents the fair and reasonable rental value for Grantor's use and occupation of the Property, and upon default in any such payment Grantor shall vacate and surrender the possession of the Property to Beneficiary or to such receiver. If Grantor does not vacate and surrender the Property then Grantor may be evicted by summary proceedings.

D.     Appointment of Receiver. Beneficiary may petition a court of competent jurisdiction to appoint a receiver of the Property. Such appointment may be made either before or after sale, without notice, without regard to the solvency or insolvency of Grantor at the time of application for such receiver, without regard to the then value of the Property or whether the Property shall be then occupied as a homestead or not, and without regard to whether Grantor has committed waste or allowed deterioration of the Property, and Beneficiary or any agent of Beneficiary may be appointed as such receiver. Grantor hereby agrees that Beneficiary has a special interest in the Property and absent the appointment of such receiver the Property shall suffer waste and deterioration and Grantor further agrees that it shall not contest the appointment of a receiver and hereby so stipulates to such appointment pursuant to this paragraph. Such receiver shall have the power to perform all of the acts permitted Beneficiary pursuant to Paragraph (C) above and such other powers which may be necessary or customary in such cases for the protection, possession, control, management and operation of the Property during the period of its appointment. Such receiver may, at Beneficiary's option, remain in place until the obligations of Grantor secured hereby have been paid in full.

E.     Rights as a Secured Party. Beneficiary shall have, in addition to other rights and remedies available at law or in equity, the rights and remedies of a secured party under the Code. Beneficiary may elect to foreclose such of the Property as then comprise fixtures pursuant either to the law applicable to foreclosure of an interest in real property or to that applicable to personal property under the Code. To the extent permitted by law, Grantor waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect.

F.     Excess Monies. Beneficiary may apply on account of the obligations of Grantor secured hereby any unexpended monies still retained by Beneficiary that were paid by Grantor to Beneficiary: (a) for the payment of, or as security for the payment of taxes, insurance premiums, or any other charges; (b) as reserves; or (c) to secure the performance of some act by Grantor.

G.     Other Remedies. Beneficiary shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Grantor under the terms of this Deed of Trust, as they become due, without regard to whether or not any other obligations of Grantor shall be due, and without prejudice to the right of Beneficiary thereafter to bring an action of foreclosure, or any other action, for any default by Grantor existing at the time the earlier action was commenced. In addition, Beneficiary shall have the right to set-off all or any part of any amount due by Grantor to Beneficiary under any of the obligations of Grantor secured hereby, against any indebtedness, liabilities or obligations owing by Beneficiary in any capacity to Grantor, including any obligation to disburse to Grantor any funds or other property on deposit with or otherwise in the possession, control or custody of Beneficiary.

H.     Application of Proceeds. Proceeds derived from the exercise of either the power of sale or the collection of rents and profits shall be applied to pay, first, costs and expenses, including the Trustee's commission in the event of sale, reasonable attorney's fees, and reasonable auctioneer's fees if such expenses have been incurred and any other expenses or advances made or incurred in the protection of the rights of the Trustee or in the pursuit of any remedy hereunder; second, to taxes and assessments due and unpaid, if the Trustee deems it appropriate to do so; third, to the payment of obligations of Grantor (including principal and interest on the Note) secured by this Deed of Trust; and fourth, the balance, if any, to the person or persons entitled thereto.

I.     Remedies Cumulative. The rights and remedies of Beneficiary as provided in this Deed of Trust the Note shall be cumulative and concurrent, may be pursued separately, successively or together, may be exercised as often as occasion therefor shall arise, and shall be in addition to any other rights or remedies conferred upon Beneficiary at law or in equity.

20.    OTHER TERMS.

A.    Waiver. No waiver by the Beneficiary shall be construed as a waiver of a subsequent similar default or any other default by the Grantor. No delay by Beneficiary in exercising any right or remedy hereunder, or otherwise afforded by law, shall operate as a waiver thereof or preclude the exercise thereof during the continuance of any default hereunder. No failure of Beneficiary to exercise any option herein given to declare the maturity of the obligations of Grantor secured hereby, no forbearance by Beneficiary after the exercise of such option, and no withdrawal or abandonment of foreclosure proceedings by the Beneficiary after the exercise of such option, shall be taken or construed as a waiver of its right to exercise such option or to declare such maturity by reason of any past, present, or future default on the part of the Grantor. Acceptance by Beneficiary of partial payments shall not constitute a waiver of the default by failure to make full payments.

B.    Indemnification. Subject to the provisions of the Loan Agreement, the Grantor agrees to indemnify and hold the Beneficiary harmless from and against any and all claims, losses, and liabilities arising out of or resulting from this Deed of Trust and the absolute assignment of Rents and Leases and the grant of security interests contained herein (including, without limitation, enforcement of this Deed of Trust) for whatever cause.

C.    Headings, Use of Terms. The article, paragraph and subparagraph headings hereof are inserted for convenience of reference only and shall not alter, define, or be used in construing the text of such articles, paragraphs or subparagraphs. Whenever used, the singular number shall include the plural and the plural the singular, and the use of any gender shall be applicable to all genders. The term "Grantor" shall include in their individual capacities and jointly all parties hereinabove named a Grantor. The term "Beneficiary" shall include any lawful owner, holder, pledgee, or assignee of any of the obligations of Grantor secured hereby. The duties, covenants, conditions, obligations, and warranties of Grantor in this Deed of Trust shall be joint and several obligations of Grantor and each Grantor, if more than one, and each of Grantor's heirs, personal representatives, successors and assigns.

D.    Severability. If any provision of this Deed of Trust is held to be illegal, invalid, or unenforceable under present or future laws effective while this Deed of Trust is in effect, the legality, validity and enforceability of the remaining provisions of this Deed of Trust shall not be affected thereby, and in lieu of each such illegal, invalid or unenforceable provision, there shall be added automatically as part of this Deed of Trust a provision that is legal, valid and enforceable and as similar in terms to such illegal, invalid or unenforceable provision as may be possible.

E.    Burden and Benefit. This Deed of Trust shall be binding on Grantor, their successors and assigns, and shall inure to the benefit of the Beneficiary and their successors and assigns.

F.    Applicable Law and Venue. This Deed of Trust was delivered to and accepted by Beneficiary in the state of North Carolina and shall be interpreted, construed and enforced according to the laws of the state of North Carolina. Any suit brought on this Deed of Trust or the Note shall be maintained in Mecklenburg County, North Carolina, or in such other court as Beneficiary may elect. Grantor hereby irrevocably submits to each such jurisdiction and hereby waives any and all objections which Grantor may have as to venue in any of the above courts.

G.    Waiver of Jury Trial. SUBJECT TO ANY ARBITRATION PROVISIONS OF THE LOAN AGREEMENT, GRANTOR AND BENEFICIARY AGREE THAT, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY SUIT, ACTION OR PROCEEDING, WHETHER CLAIM OR COUNTERCLAIM, BROUGHT BY BENEFICIARY OR GRANTOR, ON OR WITH RESPECT TO THIS DEED OF TRUST OR THE NOTE OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. BENEFICIARY AND GRANTOR EACH HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY AND INTELLIGENTLY, AND WITH THE ADVICE OF THEIR RESPECTIVE COUNSEL, WAIVE, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. FURTHER, GRANTOR WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. GRANTOR ACKNOWLEDGES AND AGREES THAT THIS SECTION IS A SPECIFIC AND MATERIAL ASPECT OF THIS DEED OF TRUST AND THAT BENEFICIARY WOULD NOT EXTEND CREDIT TO GRANTOR IF THE WAIVERS SET FORTH IN THIS SECTION WERE NOT A PART OF THIS DEED OF TRUST.

H.    Joint And Several Liability. If Grantor consists of more than one person or entity, the word "Grantor" shall mean each of them and their liability shall be joint and several.

I.     Amendment. This Deed of Trust may be amended, revised, waived, discharged, released or terminated only by a written instrument or instruments executed by the party against which enforcement of the amendment, revision, waiver, discharge, release or termination is asserted. Any alleged amendment, revision, waiver, discharge, release or termination that is not so documented shall be null and void.

J.     Special State Provisions. Notwithstanding anything in this Deed of Trust to the contrary, no sale of any portion of the Property under the power of sale contained in this Deed of Trust shall occur until Beneficiary and Trustee shall have complied with the provisions of Chapter 45 of the North Carolina General Statutes relating to the Power of Sale foreclosures, including, without limitation, the requirement of notice and hearing. Additionally, Grantor waives any rights it may have under North Carolina General Statutes Section 26-7, et seq.

K.     Commercial Purpose. Grantor confirms that the loan secured by this Deed of Trust is not subject to the North Carolina Secure and Fair Enforcement Mortgage Licensing Act ("NC SAFE Act"), the Federal Truth in Lending Act or Regulation Z of the Federal Reserve Board.

*(Signature Page to Follow)*

IN WITNESS WHEREOF, the Grantor has duly executed the foregoing as of the day and year first above written.

GRANTOR:

ABDUL INVESTMENTS, LLC
a North Carolina limited liability company

By: _~ ~ ~ ~ ~_ ___(SEAL.)
Name: Hala R. Abdul
Title: Manager

## STATE OF NORTH CAROLINA, MECKLENBURG COUNTY.

I, GABRIELLE E. HITCHCOCK , the undersigned Notary Public of the County and State aforesaid, certify that Hala R. Abdul, either being personally known to me or proven by satisfactory evidence (said evidence being DRIVER'S LICENSE ), personally came before me this day and acknowledged that he/she is the Manager of ABDUL INVESTMENTS, LLC, a North Carolina limited liability company, and that he/she, as Manager, being authorized to do so, duly executed the foregoing instrument for the purposes therein expressed on behalf of the limited liability company.

Witness my hand and official stamp or seal, this 3rd day of December, 2021.

(Seal-Stamp)

Gabrielle E. Hitchcock
Notary Public

GABRIELLE E. HITCHCOCK
Notary Public, North Carolina
Mecklenburg County
My Commission Expires
April 25, 2026

My Commission expires: 04/25/2026
Identity verified by DL

Page 13 of 13

# Exhibit C

## NOTE MODIFICATION AND EXTENSION AGREEMENT

THIS NOTE MODIFICATION AND EXTENSION AGREEMENT ("Agreement") is made effective as of the 18th day of June, 2024 (the "Effective Date"), by and among **JOHN E. SHAHEEN**, whose address is: 16928 Lancaster Hwy, Ste 109, Charlotte, NC 28277 (the "Lender"), and **ABDUL INVESTMENTS, LLC**, whose address is: 12659 Lahinch Ct., Charlotte, NC 28277 (the "Borrower"). All capitalized terms used herein and not defined herein shall have the meaning ascribed to such terms in the Note (defined herein), as amended hereby.

### WITNESSETH:

WHEREAS, the Borrower has made and issued a Promissory Note, dated November 23, 2021, made a part of hereof by this reference as fully as if set out herein verbatim (such document, as same may be have been heretofore amended, being herein referred to as the "Note"), evidencing an original indebtedness of **FOUR HUNDRED TEN THOUSAND AND NO/100 DOLLARS ($410,000.00)** and to secure the Note, Borrower executed and delivered that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated December 2, 2021, and recorded in **Book 36832, Page 857**, of the official real estate records of Mecklenburg County Registry, made a part hereof by this reference as fully as if set out herein verbatim (such document, as same may be have been heretofore amended, being herein referred to as the "Deed of Trust"); and

WHEREAS, the Borrower has requested the Lender make certain modifications to the Note; and

WHEREAS, the Lender, as holder and owner of the Note, and the Borrower mutually desire to modify and amend the provisions of the same in the manner hereinafter set out, it being specifically understood that except as herein modified and amended, the terms and provisions of the Note shall remain unchanged and continue in full force and effect as therein written; and

WHEREAS, simultaneously herewith at the request of the Borrower, said modifications to the Deed of Trust are being made by that certain Modification and Extension Agreement dated of even date herewith, made a part hereof by this reference as fully as if set out herein verbatim.

NOW, THEREFORE, the Lender and Borrower, in consideration of One Dollar ($1.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by each, do hereby agree that the Note should be, and the same hereby is modified and amended as follows:

Notwithstanding any contrary provisions contained in the Note and any amendments thereto, effective as of the Effective Date, the following changes shall be made:

1. **Interest Rate.** From and after the Effective Date, and so long as there is no event of default, interest will accrue on the outstanding principal balance of this Note at a fixed interest rate equal to TEN PERCENT (10.000%) per annum (the "Normal Rate").

2. **Repayment Terms.** Borrower shall repay this Note in sixty (60) equal monthly installments and one (1) final balloon payment, each consisting of principal and interest as follows:

   Commencing July 1, 2024, and continuing on the 1st day of each month thereafter through and including June 1, 2029, Borrower shall pay to Lender in immediately available funds, monthly installments of principal and interest in the amount of FOUR THOUSAND FOUR HUNDRED FIVE AND 88/100 DOLLARS ($4,405.88). On or before July 1, 2029, a final balloon payment in the amount of THREE HUNDRED THIRTY-SIX THOUSAND ONE HUNDRED SEVENTY-SIX AND 48/100 DOLLARS ($336,176.48) shall be due and payable. The above repayment schedule calling for (60) equal monthly installments and one (1) final balloon payment has been calculated so as to emulate a straight-line amortization of principal at the Normal Rate over a 15-year amortization period, as shown in the amortization schedule attached hereto.

3.      <u>Maturity Date</u>. Unless sooner paid, all outstanding principal and accrued and unpaid interest shall be due and payable in full at maturity on July 1, 2029. All references contained herein and in the Deed of Trust to the "maturity date" of the Note shall henceforth mean and refer to "July 1, 2029".

IT IS MUTUALLY AGREED by and between the parties hereto that this Agreement shall become a part of the Note by reference and that nothing herein contained shall impair the security now held for said indebtedness, nor shall waive, annul, vary or affect any provision, condition, covenant or agreement contained in the Note except as herein amended, nor affect or impair any rights, powers or remedies under the Note as hereby amended. Furthermore, the Lender does hereby reserve all rights and remedies it may have as against all parties who may be or may hereafter become primarily or secondarily liable for the repayment of the indebtedness evidenced by the Note, as hereby amended.

The Borrower promises and agrees to pay the indebtedness evidenced by the Note, as hereby amended, in accordance with the terms thereof and agrees to perform all of the requirements, conditions and obligations under the terms of the Note as hereby modified and amended, said documents being hereby ratified and affirmed. The execution and delivery hereof shall not constitute a novation or modification of the lien, encumbrance or security title of the Deed of Trust, which Deed of Trust shall retain its priority as originally filed for record. Borrower expressly agrees that the Note is in full force and effect and that Borrower has no right to setoff, counterclaim or defense to the payment thereof.

Any reference contained in the Note as amended herein, to the Note shall hereinafter be deemed to be a reference to such document as amended hereby.

Borrower acknowledges that Lender may reproduce (by electronic means or otherwise) any of the documents evidencing and/or securing the Note and thereafter may destroy the original documents. Borrower does hereby agree that any document so reproduced shall be the binding obligation of Borrower, enforceable and admissible in evidence against it to the same extent as if the original documents had not been destroyed.

This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina without regard to principles of conflict of laws.

This Agreement shall be binding upon and inure to the benefit of any assignee or the respective heirs, executors, administrators, successors and assigns of the parties hereto.

This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which taken together shall constitute one and the same instrument, and any of the parties hereto may execute any of such counterparts.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, this instrument has been executed under seal by the parties hereto and delivered on the date and year first above written.

LENDER:

_____ (SEAL)
John E. Shaheen

BORROWER:

ABDUL INVESTMENTS, LLC

By: _____ (SEAL)
Hala R. Abdul, Manager

| Entered Loan Variables | |
|---|---|
| Beginning principal balance: | $410,000.00 |
| Annual interest rate of the loan: | 10.000% |
| Original loan term in months: | 180 |
| Monthly principal and interest payment amount: | $4,405.88 |
| Month and year to start amortization: | Jul 2024 |
| Month and year to end amortization: | Jul 2029 |
| Amortization method: | US Rule |

| Revised Loan Amortization Schedule for 702 N Polk | | | | | |
|---|---|---|---|---|---|
| # | Date | Payment | Interest | Principal | Adjustment | Balance |
| 1 | Jul 2024 | $4,405.88 | $3,416.67 | $989.21 | $0.00 | $409,010.79 |
| 2 | Aug 2024 | $4,405.88 | $3,408.42 | $997.46 | $0.00 | $408,013.33 |
| 3 | Sep 2024 | $4,405.88 | $3,400.11 | $1,005.77 | $0.00 | $407,007.56 |
| 4 | Oct 2024 | $4,405.88 | $3,391.73 | $1,014.15 | $0.00 | $405,993.41 |
| 5 | Nov 2024 | $4,405.88 | $3,383.28 | $1,022.60 | $0.00 | $404,970.81 |
| 6 | Dec 2024 | $4,405.88 | $3,374.76 | $1,031.12 | $0.00 | $403,939.69 |
| | 2024 | $26,435.28 | $20,374.97 | $6,060.31 | $0.00 | |
| # | Date | Payment | Interest | Principal | Adjustment | Balance |
| 7 | Jan 2025 | $4,405.88 | $3,366.16 | $1,039.72 | $0.00 | $402,899.97 |
| 8 | Feb 2025 | $4,405.88 | $3,357.50 | $1,048.38 | $0.00 | $401,851.59 |
| 9 | Mar 2025 | $4,405.88 | $3,348.76 | $1,057.12 | $0.00 | $400,794.47 |
| 10 | Apr 2025 | $4,405.88 | $3,339.95 | $1,065.93 | $0.00 | $399,728.54 |
| 11 | May 2025 | $4,405.88 | $3,331.07 | $1,074.81 | $0.00 | $398,653.73 |
| 12 | Jun | $4,405.88 | $3,322.11 | $1,083.77 | $0.00 | $397,569.96 |

| # | Date | Payment | Interest | Principal | Adjustment | Balance |
|---|------|---------|----------|-----------|------------|---------|
|   | 2025 |         |          |           |            |         |
| 13 | Jul 2025 | $4,405.88 | $3,313.08 | $1,092.80 | $0.00 | $396,477.16 |
| 14 | Aug 2025 | $4,405.88 | $3,303.98 | $1,101.90 | $0.00 | $395,375.26 |
| 15 | Sep 2025 | $4,405.88 | $3,294.79 | $1,111.09 | $0.00 | $394,264.17 |
| 16 | Oct 2025 | $4,405.88 | $3,285.53 | $1,120.35 | $0.00 | $393,143.82 |
| 17 | Nov 2025 | $4,405.88 | $3,276.20 | $1,129.68 | $0.00 | $392,014.14 |
| 18 | Dec 2025 | $4,405.88 | $3,266.78 | $1,139.10 | $0.00 | $390,875.04 |
|   | **2025** | **$52,870.56** | **$39,805.91** | **$13,064.65** | **$0.00** |   |
| **#** | **Date** | **Payment** | **Interest** | **Principal** | **Adjustment** | **Balance** |
| 19 | Jan 2026 | $4,405.88 | $3,257.29 | $1,148.59 | $0.00 | $389,726.45 |
| 20 | Feb 2026 | $4,405.88 | $3,247.72 | $1,158.16 | $0.00 | $388,568.29 |
| 21 | Mar 2026 | $4,405.88 | $3,238.07 | $1,167.81 | $0.00 | $387,400.48 |
| 22 | Apr 2026 | $4,405.88 | $3,228.34 | $1,177.54 | $0.00 | $386,222.94 |
| 23 | May 2026 | $4,405.88 | $3,218.52 | $1,187.36 | $0.00 | $385,035.58 |
| 24 | Jun 2026 | $4,405.88 | $3,208.63 | $1,197.25 | $0.00 | $383,838.33 |
| 25 | Jul 2026 | $4,405.88 | $3,198.65 | $1,207.23 | $0.00 | $382,631.10 |
| 26 | Aug 2026 | $4,405.88 | $3,188.59 | $1,217.29 | $0.00 | $381,413.81 |
| 27 | Sep 2026 | $4,405.88 | $3,178.45 | $1,227.43 | $0.00 | $380,186.38 |
| 28 | Oct 2026 | $4,405.88 | $3,168.22 | $1,237.66 | $0.00 | $378,948.72 |
| 29 | Nov 2026 | $4,405.88 | $3,157.91 | $1,247.97 | $0.00 | $377,700.75 |
| 30 | Dec 2026 | $4,405.88 | $3,147.51 | $1,258.37 | $0.00 | $376,442.38 |
|   | **2026** | **$52,870.56** | **$38,437.90** | **$14,432.66** | **$0.00** |   |

| #  | Date        | Payment     | Interest    | Principal   | Adjustment | Balance      |
|----|-------------|-------------|-------------|-------------|------------|--------------|
| 31 | Jan 2027    | $4,405.88   | $3,137.02   | $1,268.86   | $0.00      | $375,173.52  |
| 32 | Feb 2027    | $4,405.88   | $3,126.45   | $1,279.43   | $0.00      | $373,894.09  |
| 33 | Mar 2027    | $4,405.88   | $3,115.78   | $1,290.10   | $0.00      | $372,603.99  |
| 34 | Apr 2027    | $4,405.88   | $3,105.03   | $1,300.85   | $0.00      | $371,303.14  |
| 35 | May 2027    | $4,405.88   | $3,094.19   | $1,311.69   | $0.00      | $369,991.45  |
| 36 | Jun 2027    | $4,405.88   | $3,083.26   | $1,322.62   | $0.00      | $368,668.83  |
| 37 | Jul 2027    | $4,405.88   | $3,072.24   | $1,333.64   | $0.00      | $367,335.19  |
| 38 | Aug 2027    | $4,405.88   | $3,061.13   | $1,344.75   | $0.00      | $365,990.44  |
| 39 | Sep 2027    | $4,405.88   | $3,049.92   | $1,355.96   | $0.00      | $364,634.48  |
| 40 | Oct 2027    | $4,405.88   | $3,038.62   | $1,367.26   | $0.00      | $363,267.22  |
| 41 | Nov 2027    | $4,405.88   | $3,027.23   | $1,378.65   | $0.00      | $361,888.57  |
| 42 | Dec 2027    | $4,405.88   | $3,015.74   | $1,390.14   | $0.00      | $360,498.43  |
|    | 2027        | $52,870.56  | $36,926.61  | $15,943.95  | $0.00      |              |
| #  | Date        | Payment     | Interest    | Principal   | Adjustment | Balance      |
| 43 | Jan 2028    | $4,405.88   | $3,004.15   | $1,401.73   | $0.00      | $359,096.70  |
| 44 | Feb 2028    | $4,405.88   | $2,992.47   | $1,413.41   | $0.00      | $357,683.29  |
| 45 | Mar 2028    | $4,405.88   | $2,980.69   | $1,425.19   | $0.00      | $356,258.10  |
| 46 | Apr 2028    | $4,405.88   | $2,968.82   | $1,437.06   | $0.00      | $354,821.04  |
| 47 | May 2028    | $4,405.88   | $2,956.84   | $1,449.04   | $0.00      | $353,372.00  |
| 48 | Jun 2028    | $4,405.88   | $2,944.77   | $1,461.11   | $0.00      | $351,910.89  |
| 49 | Jul 2028    | $4,405.88   | $2,932.59   | $1,473.29   | $0.00      | $350,437.60  |

Case 3:25-cv-00011-KDB-DCK    Document 1    Filed 01/08/25    Page 31 of 34

| 50 | Aug 2028 | $4,405.88 | $2,920.31 | $1,485.57 | $0.00 | $348,952.03 |
| 51 | Sep 2028 | $4,405.88 | $2,907.93 | $1,497.95 | $0.00 | $347,454.08 |
| 52 | Oct 2028 | $4,405.88 | $2,895.45 | $1,510.43 | $0.00 | $345,943.65 |
| 53 | Nov 2028 | $4,405.88 | $2,882.86 | $1,523.02 | $0.00 | $344,420.63 |
| 54 | Dec 2028 | $4,405.88 | $2,870.17 | $1,535.71 | $0.00 | $342,884.92 |
| | **2028** | **$52,870.56** | **$35,257.05** | **$17,613.51** | **$0.00** | |
| **#** | **Date** | **Payment** | **Interest** | **Principal** | **Adjustment** | **Balance** |
| 55 | Jan 2029 | $4,405.88 | $2,857.37 | $1,548.51 | $0.00 | $341,336.41 |
| 56 | Feb 2029 | $4,405.88 | $2,844.47 | $1,561.41 | $0.00 | $339,775.00 |
| 57 | Mar 2029 | $4,405.88 | $2,831.46 | $1,574.42 | $0.00 | $338,200.58 |
| 58 | Apr 2029 | $4,405.88 | $2,818.34 | $1,587.54 | $0.00 | $336,613.04 |
| 59 | May 2029 | $4,405.88 | $2,805.11 | $1,600.77 | $0.00 | $335,012.27 |
| 60 | Jun 2029 | $4,405.88 | $2,791.77 | $1,614.11 | $0.00 | $333,398.16 |
| 61 | Jul 2029 | $336,176.48 | $2,778.32 | $333,398.16 | $0.00 | $0.00 |
| | **2029** | **$362,611.76** | **$19,726.84** | **$342,884.92** | **$0.00** | |
| | **Totals** | **$600,529.28** | **$190,529.28** | **$410,000.00** | **$0.00** | |

Schedule created with Loan Balance Calculator
at **https://www.free-online-calculator-use.com/loan-balance-calculator.html**

# Exhibit D

# THE McINTOSH LAW FIRM, P.C.

–ATTORNEYS AT LAW–
POST OFFICE BOX 2270
209 DELBURG STREET, SUITE 203
DAVIDSON, NORTH CAROLINA 28036
TELEPHONE (704) 892-1699
FACSIMILE (704) 892-8664
WWW.MCINTOSHLAWFIRM.COM

ROBERT G. MCINTOSH
AMY SHUE ISAACS
JESSE C. JONES Ω
CHRISTOPHER P. GELWICKS ♦ ‡
LAWRENCE J. SHAHEEN, JR
LOUISE M. PAGLEN
THARESA C. GELWICKS ‡ ◊
LEAH B. TROWBRIDGE
CAMERON A. CRUMP

OF COUNSEL
JENNIFER AHLERS CONE
EDWIN A. SISSON ⌀ Φ Ψ ♣
JEFFREY J. BANYAS ⌀ Φ Ψ

SPECIAL COUNSEL
GAITHER M. KEENER, JR.

Also licensed in Florida Ω
NCDRC Certified Mediator – Clerk & Family Financial ◊
Also licensed in South Carolina ♦
Also licensed in Maryland ‡
Also licensed in Ohio ⌀
US Patent and Trademark Φ
US Court of Appeals Federal Circuit Ψ
Also licensed in Nebraska ♣

September 26, 2024

ABDUL INVESTMENTS LLC
702 NORTH POLK ST
PINEVILLE, NC 28134

RE:   Creditor:        JOHN E. SHAHEEN
      Debtor:          ABDUL INVESTMENTS, LLC
      Balance Due:     $415,818.53

Dear Mr. Ibrahim Majual:

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

The creditor has referred the above account to my office. This is your notice under the Promissory Note ("Note") included as Exhibit A signed by you on December 2nd, 2021 that the aforementioned Note has been called due. The Creditor therefore **DEMANDS** the full and immediate payment of the above Balance Due. Per the terms and conditions of the Note you have ninety (90) days to pay this note in full or collection activity will be commenced and foreclosure initiated upon the Deed of Trust executed by you on December 2nd, 2021 securing the Note. It is imperative that you contact this office within 30 days to discuss and arrange payment in full.

Sincerely,
THE McINTOSH LAW FIRM, P.C.

LAWRENCE J. SHAHEEN JR

LJS/csw